Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Wayne R. Andersen | Sitting Judge if Other than Assigned Judge | Edward A. Bobrick |
|---|---|---|---|
| **CASE NUMBER** | 01 C 6181 | **DATE** | 12/20/2002 |
| **CASE TITLE** | Frank Marusiak vs. Adjustable Clamp Co. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]    Defendant's Motion to Compel [110-1] and Vitiate Attorney-Client Privilege [110-2] is hereby Denied.  Enter Memorandum Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | | Document Number |
|---|---|---|---|---|---|
| | No notices required. | | number of notices | | |
| ✓ | Notices mailed by judge's staff. | | | | 115 |
| | Notified counsel by telephone. | | DEC 27 2002 | | |
| | Docketing to mail notices. | | date docketed | | |
| | Mail AO 450 form. | | docketing deputy initials | | |
| | Copy to judge/magistrate judge. | | 12/23/2002 | | |
| SRB | courtroom deputy's initials | U.S. DISTRICT COURT CLERK 02 DEC 26 PM 12: 18 FILED-ED-10 Date/time received in central Clerk's Office | date mailed notice SB mailing deputy initials | | |

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

FRANK MARUSIAK           )

                          )

        Plaintiff,       )

                          )

        vs.             )     No. 01 C 6181

                          )

ADJUSTABLE CLAMP COMPANY,   )     Edward A. Bobrick,

                          )     Magistrate Judge

        Defendant.      )

DOCKETED
DEC 2 7 2002

## MEMORANDUM ORDER

Before the court is the motion of defendant Adjustable Clamp Company to "Compel and Vitiate Attorney-Client Privilege."

In 1995, the plaintiff added a flat, leaf spring to the jaw of one of defendant's spring clamps, thereby allowing the clamp to apply pressure in three directions. Such a device would be useful if one were fastening an edge to a table or counter. Defendant became involved when it entered into a contract with plaintiff regarding the marketing and manufacture of the device. While this case began with plaintiff's filing of a basic breach of contract and fraud in the inducement complaint, defendant injected patent law into the mix with the filing of its answer and affirmative defenses. This discovery dispute, too, involves peripheral patent law issues. According to defendant, during the patent application process, plaintiff changed one of the drawings of the device without notifying the Patent Office. Defendant claims that the plaintiff's attorney was involved in this change. Defendant characterizes this as a fraud on the Patent Office which, according to defendant, should abrogate–or vitiate, as the defendant puts it – plaintiff's attorney-client privilege. Basically, the

issue defendant raises here is whether one of the patent drawings – figure 6 – was fraudulently changed to reflect the prototype device plaintiff made in 1995. The depiction of the length of the flat, leaf spring inserted into the jaw of the original clamp appears to be the focus of this dispute, specifically, how far the flat spring extends down the handles of the original clamp. In the prototype – which plaintiff sent to defendant in early 1996 – the flat spring extended far enough to be held in place by the legs of the clamp's coil spring against the insides of the handles of the spring clamp. Plaintiff then filed an application for a patent on the device.

Defendant contends this original patent application failed to disclose the construction of the prototype. According to defendant:

> [plaintiff] disclosed four different embodiments for a three-way spring clamp, but did not disclose the construction of his prototype. In particular, nowhere in the written description of the patent application was a clamp described wherein the leaf spring extends all the way down the clamp handles such that the leg portions of the coil spring secure them. Furthermore, none of the original patent application drawings illustrated such a clamp.

(*Adjustable's Motion to Compel and Vitiate*, at 3). It would seem that defendant's most serious complaint is that the plaintiff's application failed to adequately illustrate the prototype device he sent to defendant. While defendant does not develop this argument beyond a mere assertion, we note that the "best mode" requirement of patent law does not mandate the disclosure of each detail of prototypes made prior to filing for a patent. *Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001). Beyond that, however, figure 8 of the patent application arguably illustrates a clamp much like the prototype device. (*Adjustable's Motion to Compel and Vitiate*, Ex. 2). The ends of the leaf spring are described as "designed to snap into place" against the "lever arms." (*Id.*).

Giving the defendant the benefit of the doubt, however, the changes made to figure 6 would appear to be sets of dotted or "hidden" lines to represent the edge of spring extending down the inside of the clamp handles. This, according to defendant, constitutes a fraud on the Patent Office. Accordingly, it asks that this court abrogate the attorney-client privilege as to "all communications" plaintiff had with his patent counsel "related to preparation and prosecution of the patent applications for Three-Way Spring Clamp, and for all communications with his patent counsel prior to year end 1998 . . . related to drawings illustrating a three-way spring clamp. . ." (*Adjustable's Motion to Compel and Vitiate*, at 12).

To invoke the crime-fraud exception to the attorney-client privilege, a party challenging the attorney-client privilege must make a prima facie showing that the communication was made "in furtherance of" a crime or fraud. *In Re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 806 (Fed. Cir. 2000). The rulings of the Federal Circuit on this issue distinguish "inequitable conduct" from common law or "*Walker Process*" fraud. *See Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382 U.S. 172, 86 S.Ct. 347 (1965). In *Nobelpharma AB v. Implant Innovations, Inc.*, 141 F.3d 1059 (Fed.Cir.1998), the court explained:

> inequitable conduct is a broader, more inclusive concept than the common law fraud needed to support a *Walker Process* counterclaim. . . . Inequitable conduct in fact is a lesser offense than common law fraud, and includes types of conduct less serious than "knowing and willful" fraud.
>
> * * * * * *
>
> Because severe penalties are usually meted out to the party found guilty of such conduct, [common law] fraud is generally held not to exist unless the following indispensable elements are found to be present: (1) a representation of a material fact, (2) the falsity of that representation, (3) the intent to deceive or, at least, a state of mind so reckless as to the consequences that it is held to be the equivalent of intent (scienter), (4) a justifiable reliance upon the misrepresentation by the party deceived which induces him to act thereon, and (5) injury to the party deceived as a result of his reliance on the misrepresentation.

141 F.3d at 1069-70, *cited in Spalding Sports*, 203 F.3d at 807. In a case such as this, where reliance by the Patent Office is an issue, a finding of fraud "requires higher threshold showings of both intent and materiality than does a finding of inequitable conduct." *Nobelpharma*, 141 F.3d at 1070-71; *cited in Spalding Sports*, 203 F.3d at 807. A finding of *Walker Process* fraud "must be based on *independent and clear* evidence of deceptive intent together with a *clear showing* of reliance. *Nobelpharma*, 141 F.3d at 1071; *cited in Spalding Sports*, 203 F.3d at 807. The element of reliance by the Patent Office requires that the patent would not have issued but for the misrepresentation or omission. *Nobelpharma*, 141 F.3d at 1071; *cited in Spalding Sports*, 203 F.3d at 807.

Whatever may have occurred between plaintiff and his patent counsel regarding the figure 6 drawing, the record includes no *independent and clear* evidence of fraudulent intent. The only argument defendant makes in this regard is that:

> The only reasonable inference drawn from [plaintiff's] representation to the Patent Office that he had not changed Fig. 6 (when in fact he had changed it) is that he intended to deceive the Patent office by slipping the intentionally altered Fig.6 drawing into the patent application so that the patent would issue as such.

That may be one of several inferences to be drawn from plaintiff's conduct regarding the drawing, but it is only one. More significantly, however, it does not constitute *independent and clear* evidence of fraudulent intent. As an inference, it is dependent on the plaintiff's conduct, and it does not amount to the required independent evidence of fraudulent intent.

Furthermore, plaintiff's dealings with defendant during the prosecution of the patent tend to undermine any inference of fraudulent intent. As a result of plaintiff's submission of drawings to the defendant, the defendant was aware of the initial and subsequent figure 6's before executing a patent assignment deal with plaintiff. (*Plaintiff's Response to Defendant's Motion*, at 4; Ex. K; Ex.

4

L, at 108-113, 157-165). Someone committing a fraud on the Patent Office to secure a patent would certainly want to keep information that might invalidate that patent out of the hands of a company to whom it is trying to sell that patent.

Similarly, defendant has made no *clear showing* of reliance by the Patent Office. Such a showing, as already noted, requires demonstrating that the patent would not have issued but for the misrepresentation. Here, defendant argues that if plaintiff had told the Patent Office that he had changed figure 6, the Patent Office would have objected to the drawing as introducing new matter into the application. Defendant contends that, as a result, the patent would not have issued, relying on The Manual of Patent Examining Procedure. (*Adjustable's Motion to Compel and Vitiate*, at 11). We are not so sure of this as defendants are. First, the Manual of Patent Examining Procedure ("MPEP") carries no force of law in the courts. *Enzo Biochem, Inc. v. Gen-Probe Inc.*, 296 F.3d 1316, 1324 (Fed. Cir. 2002). Second, that portion of the MPEP upon which defendant relies (*Adjustable's Motion to Compel and Vitiate*, at 4) states that substitute or replacement drawing are not normally reviewed by the Patent Office, which raises doubt as to the materiality that a change in one drawing would have.

Finally, and most importantly, the Patent Office defines information as:

> material to patentability when it is not cumulative to information already of record or being made of record in the application, and (1) it establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) it refutes, or is inconsistent with, a position the applicant takes in: (i) opposing an argument of unpatentability relied on by the Office, or (ii) asserting and argument of patentability.

37 C.F.R. 1.56(b)(2)(ii); *Critikon v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 157 (Fed. Cir. 1997). We are hard-pressed to find any argument based on the Patent Office's own

definition of materiality in defendant's brief. As suggested earlier, Figure 8 in the application closely resembles the prototype device, which would arguably make the change to figure 6 "cumulative" and therefore, not material. In addition, defendant has given us no indication that minor changes to a drawing like those at issue here have been cause to invalidate a patent in the past. Indeed, defendant seems to indicate that the changes would not have been necessary to secure a patent. (*Adjustable's Motion to Compel and Vitiate*, at 10). Defendant also does not demonstrate that the change in the drawing refutes a position the plaintiff took in opposition to an argument of unpatentability or in support of an argument for patentability. As a result, it is far less than clear that the change in Figure 6 would be material. Defendant has simply failed to make the required clear showing that the change in the drawing was relied upon by the Patent Office as material. Accordingly,

Based on the record then, we cannot find that the defendant has advanced any independent and clear evidence of fraudulent intent. Similarly, we cannot find that the defendant has made a clear showing of reliance by the Patent Office. Accordingly, we must hold that the defendant has not made the prima facie showing necessary for the crime-fraud exception to apply to "vitiate" the attorney-client privilege.

## CONCLUSION

For the foregoing reasons, defendant's motion to Compel and Vitiate Attorney-Client Privilege is hereby DENIED.

ENTERED: _Edward A Bobrick_

**EDWARD A. BOBRICK**
**U.S. Magistrate Judge**

**DATE:** December 20, 2002